GEO. C. HARRIS et ux. *v.* A. J. PHELPS et ux.

**Bill to Sell Land to Pay Debts — Sufficiency of — Trust Funds.**
   A creditor who alleges in his bill, seeking to have lands of a decedent sold to pay debts, that the lands sought to be sold were bought with trust funds which were invested by complainant's trustee with the knowledge of the person under whom defendants claim as devisees of the land, shows facts sufficient to support the bill.

**Chancery Pleading — Demurrer — Statute of Limitations.**
   The defense of the statute of limitations cannot be availed of by a demurrer to a bill in chancery, unless it appears by the allegations of the bill that the suit is barred.[1]

**Same — Laches.**
   A complainant who shows by her bill that she has been for many years attempting to assert the claim in different actions, all of which have been defeated, is not chargable with laches.[2]

**Same — Statute of Limitations — Trustee — Cestui que Trust.**
   Until the adoption of the Code of 1880, section 2694, a debt was not barred against a *cestui que* trust by reason of the fact that the trustee was barred.[3]

**Same — Demurrer — Matters Dehors the Record.**
   Matters dehors the record cannot be availed of by demurrer but must be pleaded.[4]

Mrs. Mary B. Phelps and her husband filed the bill in this case in the Chancery Court of Washington county in November, 1880, against Mrs. H. J. Harris and her husband, G. C. Harris, and W. E. Hunt, the administrator of the estate of Henry G.

---

The statute of limitations may be set up in equity by demurrer, but when this is done that particular cause must be assigned in the demurrer. Archer *v.* Jones, 4 Cush. 583.

The defense of the statute of limitations can be set up by demurrer only when, from the face of the bill, it appears that the bar has attached. When it does not so appear, the defense must be set up by plea or answer. Dickson *v.* Miller, 11 S. and M. 594; Nevitt *v.* Bacon, 32 Miss. 212.

Where respondent relies upon the statute of limitations as barring a claim brought in by amended bill, which, because of failure to issue process on the original bill, is claimed to be the commencement of the suit, the defense should be presented by plea or answer, and not by demurrer, the question

Vick, in which they allege that said Henry G. Vick died testate in 1857, and one Pendall was the executor of his will, who qualified as such and administered the estate until January, 1869, when he resigned, and no administrator was appointed until in 1880, when Hunt was appointed administrator with the will an-

whether the process was so issued being one of fact.  Green *v*. Tippah County, 58 Miss. 337.

Statute of limitations may be set up by demurrer.  McNair *v*. Stanton, 57 Miss. 298.

Where a bill leaves certain dates blank, but does not show that complainant's remedy is barred, a demurrer on the ground of the statute of limitations, which contains no specific reference to any of the blanks, should be overruled; it should specially point out any relied on, and thus give the complainant an opportunity to amend by inserting the dates.  Watson *v*. Byrd, 53 Miss. 480; McNair *v*. Stanton, 57 Miss. 298.

2

Plaintiff, who, through no fault of his, was treated as dead throughout foreclosure proceedings, was not guilty of laches in allowing defendant to purchase lands and pay off a mortgage on the faith of such proceedings, when defendant might, with ordinary care, have learned of plaintiff's existence. Demourelle *v*. Piazza, 77 Miss. 433; 27 So. 623.

Under Code 1892, section 2731, providing that no claim is barred until the limitation of the statute has accrued, complainants in a suit to cancel conveyances as clouds on their title to land, cannot be denied relief because the action lacks but a few days of being barred by limitation, on the ground of stale claim or gross laches.  Hill *v*. Nash, 73 Miss. 849; 19 So. 707.

Staleness is not now a good defense.  An action not barred by the statute of limitation is maintainable.  Westbrook *v*. Munger, 61 Miss. 329; Taylor *v*. Chickasaw County, 70 Miss. 87; 12 So. 210.

3

"When the legal title to property, or a right in action is in an executor, administrator, guardian, or other trustee, the time during which any statute of limitations runs against such trustee, shall be computed against the person beneficially interested in such property or right in action, although such person may be under disability, and within the saving of any statute of limitations; and may be availed of in any suit or action by such person."  Code of 1880, § 2694.  See also Code of 1892, § 2761; Code of 1906, § 3123.

4

In a bill to enforce a resulting trust in land against one who has purchased from the trustee, where the facts of the purchase are shown, and it thereby appears that the defendant is a purchaser for value, he may raise the defense by demurrer.  But where the facts do not so appear, the defense, being affirmative, must be raised by plea or answer.  Greaves *v*. Atkinson, 68 Miss. 598; 10 So. 73.

nexed; that said testator owned certain real estate in Sharkey and Washington counties; that he devised to Helen S. John, who had since married G. C. Harris, certain lands in Washington county described in the bill, who took charge of same and is still in possession of them; that said testator owned no other lands, except a one-third interest in the land in Bolivar county, which complainant, Mary B. Phelps, and George C. Vick inherited as the brother and sister of said testator, they having repudiated the will; that said George C. Vick died intestate and unmarried and without issue, and his interest in same has descended to complainant, Mary B. Phelps; that for years prior to the death of said Henry G. Vick, Henry W. Vick, the father of said Henry G. Vick, and George C. Vick and complainant, Mary B. Phelps, had been in possession of large properties and individual moneys of his said three children as trustee; and prior to the death of said Henry G. Vick, his part of the trust funds had been delivered to him by the trustee; that after this, and while the said trustee was acting solely for complainant, Mary B., and George C. Vick, who were minors, said Henry G. Vick purchased certain land then in the county of Washington at a commissioner's sale on credit for $14,409, payable twelve months from date, and executed his bond for that sum and signed it as principal, and that said Henry W. Vick signed as surety, signing it "Henry W. Vick, trustee;" that he had no property of his own, and this was well known to Henry G. Vick; that said Henry G. Vick died before the maturity of said bond, and after his death, on November 15, 1859, the said Henry W. Vick paid said bond, with interest, with and out of the trust money belonging to George C. and Mary B. Vick, amounting to $15,373.54, and that it was so paid was well known to Pendall, the executor of Henry G. Vick's will, who afterwards paid Henry W. Vick $5,000 on account of said payment, leaving a balance due of $10,373.54, and said executor well knew that said money was paid out of the trust estate; that George C. Vick died in 1861 intestate and unmarried and leaving no issue, complainant being his only heir; that Henry W. Vick also died in 1861, leaving complainant his sole heir; that the balance of this sum paid by Henry W. Vick out of the trust money was due to complainant, with interest from November 15, 1859; that complainant was a minor when her father and trustee died, and attained her majority in 1863, and was intermarried with A. J.

Phelps in 1865, and knew nothing of this claim against the estate of Henry G. Vick until in 1870, and about that time she had engaged in a litigation for the purpose of recovering the property now asked to be made liable for her debt, which litigation was only terminated adversely to complainant in the United States Supreme Court at the October term, 1879, and for that reason complainant has not proceeded sooner on the claim; that there are no other assets of said estate, there being no personal property; that the said claim had been duly probated. The prayer is for the sale of the land devised by said Henry G. Vick to Mrs. Helen S. Harris to pay the debt due complainant.

The defendant demurred to the bill, and the causes of demurrer are sufficiently indicated by the opinion of the court.

The demurrer was overruled, and defendants, George C. and Helen S. Harris, appeal.

APPEALED from Chancery Court, Washington county, W. G. PHELPS, Chancellor.

Affirmed and remanded, with sixty days to answer.

*Attorneys for appellant, Nugent & McWillie.*

*Attorneys for appellee, Percy & Yerger.*

Brief of Nugent & McWillie:

The bill does not set out the bill of H. G. Vick nor the deeds and wills under which H. W. Vick held the trust property of the appellees. It must, therefore, as to these, be taken most strongly against them. On the 8th November, 1858, Henry G. Vick purchased certain lands in Washington county for $14,409 and gave his bond, with H. W. Vick, trustee, as security, due November 8, 1859. He died in the spring of 1859, and H. W. Vick, *out of the trust funds, paid the bond, after the qualification of the executor, Pendall,* who paid H. W. Vick $5,000 towards reimbursing him. Of the lands purchased by H. G. Vick, the S. W. ¼ section 21, and E. ½ section 20, altogether a half section, was devised to the appellant; the N. ½ section 28, and the S. ½ section 33, became the property of the appellant. The devisee got a *half section* and the heirs at law got a *whole section*

under the will of H. G. Vick or otherwise; the total debt due was $15,000, and of this the appellant and her brother, George C. Vick, owned really $10,000 and the devisee $5,000. Thus it seems to have been settled by the executor, Pendall, and the testator, H. W. Vick. The sum can be brought out thus: One and one-half sections of land cost the sum of $15,000; one-half section therefore would cost $5,000. The lien rested on the whole body of land, and the parties seem to have considered that there was no essential difference in its value anterior to the late war. Pendall knew that the whole bond was paid by Vick, trustee, and refunded to him $5,000. There is nothing in the bill to show that the estate of H. G. Vick was insolvent; nothing to show that the executor was not provided with ample funds to pay the whole debt; nothing to show as to the number and value of slaves devised by H. G. Vick to his brother and sister. The facts are stated that the bond was given and paid by H. W. Vick, and that returned to him $5,000. The transaction runs back to 1859. H. W. Vick is dead, and possibly Pendall, and the fair inference is that the payment of $5,000 involved a fair, legal adjustment of the debt which had become the debt of the heirs and devisee. H. W. Vick did not die until 1861, two years after he had paid the bond.

Mary B. Phelps, *nee* Vick, attained her majority in August, 1863, and married in 1865; she knew all about the claim in 1870, and does not give any fair reason for not bringing her suit sooner. Twenty-two years after the claim originated she brings her bill to charge upon part of the land in the hands of the devisee an entire debt which constituted a lien upon two-thirds of the land which she has herself inherited. Now, the statute began to run against H. W. Vick, trustee, from the time he paid the bond, and the lien upon the land growing out of the filing of the bond was discharged. If he had a successor in office, as he must have done, the statute has continued to run and the claim has long since been barred under any statute which may be invoked.

If the claim was a purely personal claim in favor of H. W. Vick, the statute applies with equal force. The debt became due to him after Vick's death, and, indeed, after the qualification of Pendall as executor, and the statute of limitations had run over two years before the death of H. W. Vick. It is true that there has been no administration upon his estate, but that will not sus-

pend the running of the statute perpetually. Pendall surrendered his trust and was discharged in January, 1869. The bill alleges that Vick left no estate whatever and owed no debts except what might be due as a settlement of the trust account. In August, 1863, appellee attained her majority and married in 1865. The statute commencing to run in November, 1859, was only arrested by the Act of 1862. The claim was, therefore, barred at the time that Pendall was discharged. Manly *v.* Kidd, 33 Miss. 141; Sivley *v.* Summers, 57 Miss. 729; Turner *v.* Ellis, 2 Cush. 173.

It is contended that the absence from the State of the appellants cuts no figure in this case. They did not and do not owe the alleged debt. It was a debt due, if at all, by and payable out of the estate of H. G. Vick and chargeable upon his executor. He was appointed by the Probate Court of Washington county, and could have been sued at any time by H. W. Vick, after payment of the bond given for the purchase money of the land. Johnson *v.* Pyles, 11 S. & M. 189.

Once set in motion, the statute continues to run, notwithstanding the coverture of Mrs. Phelps. Stevenson *v.* McReary, 12 S. & M. 9; Merrit *v.* Doss, 31 Miss. 275; McCoy *v.* Nichols, 4 How. 31; Abbott *v.* McElroy, 10 S. & M. 100; Angell Limitations, § 56.

There has never been a moment of time when appellee could not have done exactly what she has now done. She has had an Adm. C. T. A. of H. G. Vick appointed, and has brought a bill to reach his real estate in the hands of his devisee. She could have sued in 1870, when she became cognizant of her rights, and certainly ought now to be heard when she invokes the disability of coverture with a husband to advise her and a capable lawyer to represent them.

But the staleness of the claim ought to defeat it. It has passed beyond its twenty-one years. If it be not governed by the statute of limitations, then the appellee must defer to the court of conscience and be denied relief if the circumstances are such as to cast a shadow upon it and lead to the inference that injustice may be done by entertaining the bill. The "circumstances of laches and long neglect by the complainant independent of the statute" ought to condemn her case. Taylor *v.* Benham, 5 How. (U. S.) 263.

In Smith *v.* Clay, Ambler, 645, Lord Camden says: "A court of equity which is never active in relief against conscience or pub-

lic convenience has always refused its aid to stale demands when
a party has slept upon his right and acquiesced for a great length
of time. Nothing can call forth this court into activity but
*conscience, good faith and reasonable diligence.* When these are
wanting the court is passive and does nothing. Laches and neglect
are always discountenanced; and, therefore, from the beginning
of this jurisdiction there was always a limitation to suits in this
court. Therefore, in Little *v.* Lord Macclesfield, Lord North said
rightly that, though there was no limitation to a bill of review,
yet, after twenty-two years, he would not reverse a decree but
upon very apparent error." See 2 Story's Eq. 1520, *et seq.*

We insist that if there were no statute of limitations applicable
to this case, the appellee has lost all rights she may have had by
laches and lapse of time, and that appellant ought not now to be
called upon to surrender property turned over to her by Pendall,
executor, twenty odd years ago. We think this view is cogently
presented by the decision of this court in Ferguson *v.* Scott, 49
Miss. 504-6.

2. But we insist that appellee ought to be estopped to assert
the claim relied upon. She embarked in a litigation with appel-
lant in 1870 and endeavored to recover the lands now sought to
be subjected to her supposed debt. Manifestly she proceeded in
this adventure upon the supposition that the will of Vick did not
operate to convey title to appellant, his devisee. Was it not proper
in that proceeding to propound this claim? A party failing to
assert a claim or allowance in a suit in equity, in which it might
have been litigated with propriety, will not be permitted after-
wards to enforce it in a second suit unless his failure to do so was
caused by the fraud of his adversary and was not attributable to
his own negligence. Stewart *v.* Stebbins, 30 Miss. 66; 56 Miss.
652.

It is true that appellee does not specify what sort of "litigation"
she engaged in; but the presumptions are against her. In fact,
she brought a bill, which was dismissed by this court, and after-
wards an action of ejectment, which was decided against her by
the Supreme Court of the United States. Manifestly, in the first
case she could have framed her bill so as to charge the land with
the debt now asserted if she failed to establish title to it, or in
defeating the title of appellant under the will of H. G. Vick. It
will not do to allow her to vex and harass the appellants by innum-

erable suits, when all her right could have been litigated in and under one bill framed to suit the exigencies of her case and thus entail loss and expense upon them. There should be an end to all litigation and the parceling up of lawsuits should be suppressed.

3. But the estate of H. G. Vick has been fully administered, the executor has accounted and been discharged, and the property, real and personal, has been distributed to the devisees and heirs according to their respective claims. Does the bill make a case which entitles the complainants to have the estate reopened and the possession and rights of the parties changed? We think not. The bill is silent as to the shares left by H. G. Vick which descended to appellees and were chargeable in law and fact with all of the testator's debts. Twenty-two years after these slaves were accepted by Mrs. Phelps' trustee in a settlement with Vick's executor, and long after the war had resulted in their emancipation, she propounds a debt. Certainly this cannot be done. It might be allowed if there were any charge of fraud, accident, or mistake, but there is no such allegation made.

4. The signing of the bond by H. W. Vick did not bind the trust estate; it was his personal contract. When he paid the money, H. G. Vick's executor became liable to account to him personally for the whole or part of the debt, as the case may be. There was an accounting and a payment of $5,000 by Pendall, and this must end the matter unless it can be shown that the accounting did not involve a settlement complete and final. At any rate, the payment of this note out of the trust funds did not create any equity in favor of the appellant to enforce a lien against the lands. Payment of the bond discharged the debt and lien. It may be that the accounting between Vick and appellee would disclose an indebtedness in favor of the trustee. There was a debt due H. W. Vick, and only that; the bill as framed is not maintainable; the contention is limited to a liability of H. G. Vick's estate in favor of appellee as heir at law of H. W. Vick; and there can be no claim growing out of the peculiar method used in paying the debt to enforce a lien upon the lands in the hands of the devisee. Appellee then occupies the position of an heir at law applying to the Chancery Court *twenty-two years* after the right to sue accrued to her ancestor, to subject lands in the hands of her brother's devisee to the payment of a so-called

debt, under suspicious surroundings. And when the court sees that the ancestor himself, having the right of an action for some two years before his death, did not sue, but accepted $5,000 from the executor of the principal debtor and parted with the possession of the bond, and that the estate of the principal has been closed, is it not apparent that conscience is aroused and that the case should be throttled? Vick did not sue, and the irresistible conclusion is that he did not think he had the right to sue in view of the peculiar facts in the case.

5. We say there is no equity on the face of the bill and that it is insufficient. The court will discover that the appellee fails to present all the facts of the case within her knowledge. She does not set out the will of H. G. Vick nor the trust deed under which her father held her property. She does not state the agreement and understanding between her trustee and Pendall when the $5,000 was paid. She does not state the extent to which she was benefited under the will of her brother, nor does she satisfactorily account for the long delay about bringing this suit, after having vexed the appellant otherwise for some eleven years with suits harassing and costly in the extreme, and which have always resulted against her claim.

Brief for the appellees was not found in the record.

OPINION.—CHALMERS, C. J.:

We understand the bill as setting up the fact that lands named in it were bought with trust funds which were invested in them by complainant's trustee with the knowledge of the person by a devise from whom defendants now hold them. The facts set forth seem sufficient to support the bill. We will notice the several points raised against it by the demurrer and pressed in the brief of counsel for defendants.

1. The bill is not barred by the statute of limitations so far as shown by its own allegations. Complainant became of age in 1863. There was at the time no statute of limitations in this State. Before the statute commenced to run she married and has been ever since a *femme covert*. If this be true, the statute had not begun to run when the bill was filed.

2. No such laches can be imputed to her as will cause a rejection of her demand as being stale. She shows that she has

been for many years attempting to assert it in different actions, all of which have been defeated. Whatever other defenses may grow out of this fact, it certainly rebuts the charges of laches. Even if this were not true, we are by no means prepared to affirm that where the rights of third parties have not intervened there can be in this State any such thing as the defeat of a just, legal, or equitable demand, by reason of any delay in its assertion, short of that which constitutes a bar under the statute of limitations.

3. We cannot say that complainant is estopped to litigate the present claim because she could have asserted it and failed to do so in the previous litigation between the parties. The records of those suits are not before us, nor are we advised as to their scope and effect. If relied on as constituting *res adjudicata,* they must be set up by plea or answer.

4. For the same reason we cannot notice the suggestion that the estate of Henry Vick was entirely solvent and that complainant obtained a large part of that estate in the shape of slaves and other personal property, and is now precluded, after that estate has perished through no default of defendant, from coming on the devisee for payment of this demand. This question must be raised by the further pleading in this case. There is nothing to suggest it on the face of the bill.

5. Even though the debt was barred as against complainant's trustee, it was not so as to her, according to the repeated decisions of this court. The law is otherwise under the Code of 1880, § 2694..

6. There is nothing in the bill to suggest the idea that there was any accounting and settlement of the demand propounded here by and between complainant's trustee and the executor of Henry Vick's will. The latter is merely stated to have made a partial payment on the note or bond. If there was such settlement, it must be pleaded by defendants.

*Decree affirmed* and sixty days given to answer.